BANK OF COMMERCE & TRUST Co. *et al. v.* COMMISSIONERS OF TALLAHATCHIE DRAINAGE DIST. No. 1.

(Division B.   May 5, 1930.)

[128 So. 91.   No. 28474.]

Julian C. Wilson, and Wilson, Gates & Armstrong, all of Memphis, Tenn., for appellants.

**J. M. Kuykendall** and **Caldwell & Caldwell**, all of Charleston, and **Watkins, Watkins & Eager**, of Jackson, for appellee.

Argued orally by **Julian C. Wilson**, for appellant and by **W. H. Watkins** and **J. M. Kuykendall**, for appellee.

**Anderson, J.,** delivered the opinion of the court.

After the affirmance by the Supreme Court of the judgment of the circuit court of Tallahatchie county in favor of the Yocona-Tallahatchie drainage district, against the Tallahatchie drainage district (148 Miss. 182, 114 So. 264), the Yocona district transferred and assigned the judgment to appellant, the Bank of Commerce & Trust Company. The drainage improvements in the Tallahatchie district had been abandoned before there was any assessment of benefits, and the judgment represented preliminary expenses incurred prior thereto. Appellants, the Bank of Commerce & Trust Company and the Yocona district, joined in a petition to the chancery court of Tallahatchie county, which court was administering the affairs of the Tallahatchie district, to collect the judgment by having the chancery court, under the authority of section 4, chapter 269, Laws of 1914, as amended by section 1 of chapter 159, Laws of 1918 and section 1, chapter 213, Laws of 1922, to apportion the indebtedness represented by the judgment among the several counties in which the lands of the district were situated; and that such judgment be made a charge upon such lands. Appellants' petition was met by a demurrer by appellee, which demurrer was by the court sustained, and appellants' petition dismissed. From that decree appellants prosecute this appeal.

The Tallahatchie drainage district was organized under chapter 195, Laws of 1912, and the amendments thereto, which are embodied in chapter 269, Laws of 1914, chapter 159, Laws of 1918, and chapter 213, Laws of 1922. Commissioners were appointed for the district, and qualified and acted. A large amount of preliminary work was done by the commissioners and engineer, consisting of surveys and plans and specifications of the proposed drainage improvements. In connection therewith a considerable amount of personal property was acquired by the district. The sum total of these costs was large—part being the judgment involved in this cause. The

commissioners assessed the benefits to the lands of the district, and gave notice to the landowners of the district of a hearing of the assessments. For reasons unnecessary to state, the assessments were withdrawn, and the proposed improvements in the district abandoned.

Section 4, chapter 195, Laws 1912, and the amendments thereto, being section 4 of chapter 269, Laws of 1914, section 1 of chapter 159, Laws of 1918, and section 1 of chapter 213, Laws of 1922, provide that in the event the assessment of benefits shall not be made, "or the improvements shall not be completed, or the same be abandoned, for any cause, after such indebtedness is incurred, the board of supervisors of the county in which the drainage district is located shall levy an acreage tax, or an ad valorem tax, on the lands in said proposed drainage district to pay such indebtedness. If an ad valorem tax be levied, the board of supervisors may use for that purpose the assessments of the land of the last assessment roll of the county in which said lands are situated; and in case the lands in the proposed district lie in more than one county, then the chancellor, aforesaid, shall apportion said indebtedness between the several counties, and the board of supervisors of the several counties shall thereupon levy such apportioned tax upon the lands of their counties respectively, according to the ruling of the said chancellor."

It will be observed that the statute provides for no notice to the landowners of the district of the hearing in the chancery court at which the indebtedness is apportioned between the counties, and made a charge on the lands of the district, to be collected either by an ad valorem tax or an acreage tax on the lands.

Appellee contends that, for that reason, the statute is violative of the due process clause of the Fourteenth Amendment to the Federal Constitution, and therefore is void and unenforceable.

The statute under which the Tallahatchie district was organized expressly declares that such a drainage district is a body politic; that it shall have a common seal,

shall have power to make by-laws, rules, and regulations, and to alter and change the same, to contract and be contracted with, and to sue and be sued; and there is an express provision in the statute authorizing the drainage commissioners to incur, and to bind the district for, the preliminary expenses of surveys, plans, and specifications, regardless of whether the contemplated improvements in the district go forward or are abandoned. Under our laws drainage districts are public as well as private corporations. In addition to serving private gain, they are intended to promote the public health and convenience. Jones v. Belzoni Drainage District, 102 Miss. 796, 59 So. 921; Tallahatchie Drainage District v. Yocona-Tallahatchie Drainage District, 148 Miss. 182, 114 So. 264; Houck v. Little River Drainage District, 239 U. S. 254, 36 S. Ct. 58, 60 L. Ed. 266.

The commissioners of a drainage district, acting within the scope of their authority, are the representatives of the landowners of the district. They have the right to bind the landowners by their contracts. In that respect drainage districts are on the same footing as other political subdivisions of the state, such as counties and municipalities. A judgment against a county or a municipality affecting the general interest of its taxpayers is binding upon the latter, although they are not nominal parties to the suit. Every taxpayer, although not a nominal party, is a real party to such a judgment. Such actions are public, not private, suits. They are governed by a like principle to that which obtains in a taxpayer's suit against the governing board of a county or municipality, involving questions of general interest to taxpayers. A judgment in such a case is binding upon all taxpayers as fully as if they had been made actual parties. All taxpayers are affected with notice of the pendency of suits of that character—they are parties thereto, whether they would be or not. Applying those principles here, the judgment against the commissioners of the drainage district is res adjudicata against all the landowners of the district. Williams v. Board of Super-

visors, De Soto County, 139 Miss. 78, 103 'So. 812; Von Zondt v. Town of Braxton, 149 Miss. 461, 115 So. 557; Jonestown v. Ganong, 97 Miss. 67, 52 So. 579, 692; Ashton v. City of Rochester, 133 N. Y. 187, 30 N. E. 965-968, 31 N. E. 334, 28 Am. St. Rep. 619; Shanahan v. City of So. Omaha, 2 Neb. Unof. 466, 89 N. W. 285-288; Stone v. Winn, 165 Ky. 9, 176 S. W. 933-940; Eaton v. Board of Trustees School Dist., 184 N. C. 471, 114 S. E. 689; Mo. Pac. R. Co. v. Sears, 166 Ark. 104, 265 S. W. 653.

The statute provides that the boards of supervisors of the counties in which the drainage district is located shall either levy an ad valorem tax or an acreage tax on the lands of the proposed drainage district, to pay such indebtedness; and if an ad valorem tax is levied, the board of supervisors shall use for that purpose the last assessment roll of the county in which the lands are situated; and that the chancery court shall apportion the indebtedness between the counties, and the board of supervisors of the several counties shall thereupon levy the apportioned tax upon the lands of the counties respectively, according to the ruling of the chancery court.

The statute means that the chancery court shall make the apportionment of the indebtedness, and direct whether it shall be paid by an acreage tax on the lands of the district, or by an ad valorem tax. In the determination of this question the statute provides for no notice to the landowners. Does the failure to do so violate the due process clause of the Fourteenth Amendment to the Federal Constitution?

So far as the ad valorem taxes are concerned, we unhesitatingly answer that question in the negative. Due process has nothing whatever to do with the mere levy of ad valorem taxes. The ad valorem tax rate can be fixed by the proper authorities without notice to the taxpayers. Due process, however, comes into full force when property is valued as the basis for an ad valorem tax. Valuing and equalizing values of property as the basis for an ad valorem tax are in their nature judicial acts, and prop-

erty owners cannot be bound by such values without notice and opportunity for a hearing.

The drainage statute involved furnishes such notice and opportunity of hearing, in this, it provides that if an ad valorem tax is levied to meet the indebtedness of the district, the last land assessment rolls of the counties in which the lands are situated are to be used. In other words, the land assessment rolls of the counties in which ad valorem taxes for state and county purposes are based are to be used. Under our statutes, the assessment of land values as represented by those rolls is made after due notice to, and an opportunity of hearing by, the landowners. No other notice is necessary, in order to furnish due process to the landowners of the district.

We do not decide the question whether notice to the landowners of the district would be necessary if an acreage tax were levied to meet the indebtedness. We have some doubt on that question, and therefore leave it undecided.

We think a reasonable and fair interpretation of the statute is that where an ad valorem tax is levied, the indebtedness is to be apportioned among the different counties in which the lands of the district are located, in the proportion that the assessed value of such lands in each county bears to the total assessed value of all the lands composing the district as shown by the current land assessment rolls of such counties. An ad valorem tax so levied would appear to be more just to the landowners than a flat acreage tax.

We find no merit in the other grounds upon which appellee argues that the judgment of the court should be sustained, and we do not think they are of sufficient seriousness to require a discussion by the court.

Reversed and remanded.