YOKNAPATAWPHA DRAINAGE DISTRICT NO. 2, LAFAYETTE COUNTY, MISSISSIPPI, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16283.

United States Court of Appeals Fifth Circuit.

April 2, 1957.

Rehearing Denied May 23, 1957.

Phil Stone, James Stone & Sons, Oxford, Miss., for appellant.

Elizabeth Dudley, Atty., Dept. of Justice, Washington, D. C., Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., Thomas R. Ethridge, U. S. Atty., Oxford, Miss., S. Billingsley Hill, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before BORAH, TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment based on a jury verdict in favor of appellant in a land condemnation action in which appellant contended that the damages for the taking of its drainage canal should include the amount which had been assessed as benefits accruing to other lands previously taken by the Government, which would thus no longer be subject to a charge for the maintenance of the remaining section of the canal.

Although it is difficult to see how in a condemnation action for the taking of the ditch alone the drainage district could procedurally seek damages which it claims it suffered because the Government had in other actions taken title to two thirds of the lands in the drainage district, thus removing such lands from the assessment rolls for further charges in maintaining the rest of the canal, we shall consider the case as though this claim could properly be made in this manner, as did the trial court and as do both parties here.

It is quite clear that whatever lands the United States took it took free of lien and it would be necessary for the court to authorize the finding by the jury of a sufficient amount to discharge any lien that actually existed in favor of the district at the time of taking. We must therefore determine whether the Mississippi statute either created, or authorized the creation by the district of, a lien for the full amount of the benefits assessed or only for the amount necessary for the initial construction and the currently needed sums for maintenance.

The facts are not in dispute.

The United States instituted proceedings in January, 1952, to condemn the fee simple title to lands located in Yalobusha, Panola and Lafayette Counties, Mississippi, for use in the construction of the Enid Dam and Reservoir Project. The declaration of taking and complaint were filed, and for the purposes of this appeal, Tract No. 457 was taken, consisting of 126.5 acres and comprised of a drainage canal with connecting drainage works owned by the appellant. Along with the declaration of taking $1,265.00 was deposited in the registry of the court as the estimated just compensation for the tract. The district extends from the Yalobusha-Lafayette County lines in a northeasterly direction and constitutes the northeastern extremity of the lands condemned for the project. This district is part of a system of drainage canals and linked with other drainage districts below it. With the exception of 1,973.5 acres and two miles of the canal, both located in the eastern end of the district, the remaining 4,115.6 acres within the district were taken. The owners of this 4,115.6 acres were compensated for the market value of their lands taken.

Judgment on the declaration of taking was entered January 22, 1952, vesting fee simple title to the lands in question in the United States and authorizing immediate possession.

Appellant's answer set out that the drainage district was organized and functions under Chapter 197, Laws of Mississippi, 1912, and is by virtue of such laws a municipal corporation; that the County Board of Drainage Commissioners, as required by law, assessed $147,-151.00 in benefits to accrue to the lands within the district by reason of the improvements to be made; that the assessment became a lien upon all of the lands in the district; that the drainage system in the district was constructed according to an approved plan for a total cost of $58,860.40 for which bonds were issued; that in accordance with assessment of benefits the district commissioners assessed the lands in the district for the years 1917 through 1941;[1] that the district has the power and is under obligation to assess the lands in the district for future necessary maintenance; that the unused assessed benefits on all lands in the district, including but not restricted to the lands previously taken, is $33,109.05; and that to defray expense it incurs in furnishing future drainage protection, it will be necessary to levy taxes based upon the assessed benefits accruing to all lands in the district, including those taken by the United States.

The appellant contends that by virtue of the alleged lien the district has an indefeasible estate in the lands which is property for which the United States must pay compensation in the amount of the unused assessed benefits, or, in the alternative, it should have the right to levy on the unused assessed benefits of all the lands in the district for maintenance of the drainage system when it becomes necessary.

Upon motion of the United States, the court entered an order striking all of the appellant's answer except as to its claim for compensation for the canal and its land taken by the United States in the district. The order stated that Yoknapatawpha Drainage District No. 2 has placed no specific lien on any of this land up to this time and that there is no specific lien on any of the land in said Drainage District because of any unused assessed benefits." We agree.

Chapter 197, Laws of Mississippi, 1912, is entitled in part, "An Act to create additional methods of organizing and maintaining drainage districts * * *." In conformity with Section 12 of the Act, prior to the organization of the drainage districts, the District Drainage Commissioners are to go upon the lands upon which the work of constructing the canal is proposed and determine: (1) the location of the proposed work; (2) the cost; (3) the land that will be injured or damaged by the proposed work and the aggregate amount to be sustained, and (4) "What lands will be benefited by the construction of the proposed work, and whether the aggregate amount of benefits will equal or exceed the cost of the construction of such work."

Section 20 of the Act provides that after organization of the drainage district "the said district drainage commissioners shall go upon said lands and examine the same and apportion the cost of said proposed work upon the several tracts of land according to the benefits received [the assessment of benefits] by each from the said proposed work, * * * and shall also estimate and set down * * * the amount of the assessment against each tract of land and shall make and file a schedule or assessment roll of the same * * *."

It is clear from this section that the assessment of benefits and assessment for the cost of the proposed work are not one and the same, but the assessment of benefits accruing to each tract in the district from the construction of the drainage canals is used as a basis for apportioning to the various tracts within the district their proportionate share of the cost of the proposed work. Consequently the $147,151.00 figure here constitutes the total assessment of benefits

---

1. This was to retire the outstanding bond issue in the amount of $58,860.40.

accruing to all tracts within the district and was the basis for apportioning the cost of the proposed construction work, $58,860.40, to each tract.

Section 25 provides that upon confirmation of the assessment, the "county board of drainage commissioners may order the assessments to be paid in installments, in such amount and at such times as will be convenient *for the accomplishment of the proposed work;* or may order the issuance of bonds for the total amount of said assessment * * *." (Emphasis supplied.) The section further provides that "said assessment or any bonds issued as herein provided shall be a lien upon the lands assessed, as other taxes, and such liens shall continue until such assessment is paid * * *." This section is clear in its provisions that it is the *assessments for the proposed work that shall be a lien.* Therefore, only the $58,860.40 figure constituted a lien upon the lands within the district and it is uncontroverted that this obligation has been discharged.[2] There is no provision that the assessment of benefits accruing to all lands within the District constitutes a lien. The court below was thus correct in determining that the unused assessed benefits in the sum of $33,109.05 did not constitute a lien upon the lands condemned by the United States.

There is nothing in the cases cited [3] by appellant that conflicts with this construction of the Mississippi statute.

■ Appellant makes the further contention that even though the court should hold that there was no lien on the land taken, nevertheless the District had an indefeasible interest and estate in such land for the taking of which it was entitled to compensation. Appellant relied on United States v. Aho, D.C.Or., 68 F. Supp. 358 and United States v. Florea, D.C.Or., 68 F.Supp. 367, in support of this contention. These cases were not appealed to the Court of Appeals for the Ninth Circuit, and if they are to be considered as authoritative they are nevertheless distinguishable from the case before us. There the court placed great stress on the statute of Oregon, which specifically provided that "all the lands and other real property within the district shall be and remain liable to be assessed for such payments * * *." O.C.L.A. §§ 123–144 and also stressed the fact that the lands there taken would continue to benefit even in the hands of the Government from the drainage canal operated by the district. The court in effect found in the Aho case that these facts created an indefeasible interest or estate in the lands and in the Florea case that they created a property interest which was taken by the Government. Although not stressed by the Government in the trial below or in its brief here, there is a further distinction, it seems to us, in that the claim for damages for the loss of the right to assess the taken property in the two Oregon cases was made in the condemnation proceedings as to the lands themselves; whereas here the District did not intervene in an effort to obtain its compensation when the 4,115.6 acres of land were being taken but seeks to assert its claim in this proceeding. The vice of this procedural approach, it seems to us, is that the landowners in the earlier condemnation cases were paid the total value of their lands, benefited as they were by the drainage system; whereas if any claim existed against such lands for the continued maintenance of the drainage system the cost of such maintenance would properly be charged against the lands themselves and thus against the award to the owners rather than to the United States Government, which must now be deemed to have paid the full value of the lands, including the benefits of the drainage system.

2. $860.00 of the bonds issued have not been retired, but these have not been presented for payment and the holders are unknown to the District. Funds for payment have been collected.

3. Willis Creek Drainage District v. Yazoo County, Miss.1950, 48 So.2d 498; Gillis v. Indian Creek Drainage District, 1929, 155 Miss. 160, 124 So. 262; and 1931, 160 Miss. 528, 134 So. 173; and Howie v. Panola-Quitman Drainage District 1933, 168 Miss. 387, 151 So. 154.

In view of our conclusion that no lien existed on the land here being condemned and that no indefeasible interest or estate is being taken from the District in this proceeding, it follows that no future assessment can be levied on these lands now owned by the United States whether the levy be termed a local assessment, Mullen Benevolent Corp. v. United States, 1933, 290 U.S. 89, 54 S.Ct. 38, 78 L.Ed. 192, or may be deemed a tax, since it is established that property of the United States is immune from any form of state taxation. United States v. Allegheny County, 1944, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209; Mayo v. United States, 1943, 319 U.S. 441, 63 S.Ct. 1137, 87 L. Ed. 1504; and Jefferson County v. United States, 5 Cir., 1947, 164 F.2d 184.

At the trial to determine just compensation for the district lands taken, the court instructed the jury, after hearing testimony of the Government expert appraiser, that the 126.5 acres in the ditch had only a nominal value of from $1250.00 to $1500.00. The verdict returned was for $1400.00. This verdict was supported by the testimony of the only witness as to value.

The judgment must be affirmed.